**MICHELLE DIANE GANEY**
Guardian for Minors:
T.E.W., born in 2012;
T.A.W., born in 2012;
M.J.G., born in 2015.
1109 E. Bradley St.
Laramie, Wyoming 82072
mganey@uwyo.edu

**MICHAEL JAMES GANEY, JR.**
Guardian for minor:
M.J.G., born in 2015.
P.O. Box 8731
Jackson, Wyoming 83002
mganeyjr1970@gmail.com

Self-Represented

**FILED**

Aug 07 2023

**CLERK, U.S. DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
BY    s/ GloriaVocal    **DEPUTY**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE DIANE GANEY, an individual; T.E.W., T.A.W., and M.J.G., by and through their guardian(s). <br><br> MICHAEL JAMES GANEY, JR., an individual; M.J.G., by and through his guardians. <br><br> Plaintiffs, <br> vs. <br><br> COUNTY OF SAN DIEGO, Child Welfare Services (CWS); JANETTE VILLA, CWS Caseworker, an individual; TOREE RUIZ, CWS Caseworker, an individual; JANEA AYALA, CWS Caseworker, an individual; | Case No.:   **'23 CV 1448 GPC AHG** <br><br> **COMPLAINT FOR DAMAGES, EQUITABLE RELIEF AND DEMAND FOR JURY TRIAL** <br><br> 1. Violation of Federal Civil Rights 42 U.S.C.§ 1983 First Amendment, Retaliation. <br> 2. Violation of Federal Civil Rights 42 U.S.C. § 1983, First Amendment, Familial Association. <br> 3. Violation of Federal Civil Rights 42 U.S.C § 1983, Fourth Amendment. <br> 4. Violation of Federal Civil Rights 42 U.S.C. § 1983, Fourteenth Amendment. |

---

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

CHRISTOPHER TAYLOR, Social Work Supervisor, an individual; MARY SHEHEE, Social Work Supervisor, an individual; LILIANA IRIBE-MORENO, CWS Caseworker, an individual; JADE NIETO, Social Work Supervisor, an individual; NICK MACCHIONE, Agency Director, an individual; DOES 1-10.

Defendants.

5. Violation of Federal Civil Rights 42 U.S.C. § 1983, *Monell* related claims.
6. Violation of Federal Civil Rights 42 U.S.C. § 1983 Judicial Deception.
7. Violation of State Civil Rights (Civil Code § 52.1).
8. Intentional Infliction of Emotional Distress, False Imprisonment, and Negligence.
9. Cal. Wel. and Inst. Code § 300(b)(1) is unconstitutionally vague as applied to Domestic Violence victims.

COMES NOW, Plaintiffs, who allege upon information and belief as follows:

**JURISDICTION AND VENUE**

1. This complaint arises under Federal Civil Rights Act, 42 U.S.C. §1983. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367(a) concerning federal question jurisdiction.

2. This complaint also arises under various state law claims for tort violations. This court has subject matter jurisdiction over these state law claims under 28 U.S.C. §1367(c) concerning supplemental jurisdiction.

3. This court also has subject matter jurisdiction under diversity jurisdiction in this matter pursuant to 28 U.S.C. §1332. The Plaintiffs are residents of Laramie, Wyoming and Jackson, Wyoming, while the Defendants are, or were at the relevant times, residents of San Diego, California. The amount in controversy exceeds $75,000, with compensatory damages estimated at $635,000.00, not including punitive and other damages.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

2

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

Venue is also proper under 28 U.S.C. § 1391 (b)(1) because the Defendants are subject to personal jurisdiction in this District under 28 U.S.C. §1391(c). Plaintiffs waive personal jurisdiction for the purposes of this action only, retaining personal jurisdiction in their home state of Wyoming for all other purposes.

5. Plaintiffs make the following allegations and claims upon personal information and belief.

**THE PARTIES**

**PLAINTIFFS**

6. At all relevant times herein, PLAINTIFFS were residents of the COUNTY OF SAN DIEGO (hereinafter referred to as "THE COUNTY." Plaintiff Michelle Diane Ganey ("MICHELLE") is the mother of the MINOR PLAINTIFFS, T.E.W., T.A.W., and M.J.G. Plaintiff Michael James Ganey Jr. ("MICHAEL") is the father of the MINOR PLAINTIFF, M.J.G. Plaintiffs are collectively referred to at times herein as "PLAINTIFFS."

**DEFENDANTS**

7. The COUNTY OF SAN DIEGO CHILD WELFARE SERVICES (hereinafter referred to as "the COUNTY") was at all relevant times and is a local public entity, as that term is defined in Government Code section 900.4.

8. DEFENDANT COUNTY was at all times alleged herein to be responsible for the appointment and promotion of employees of the COUNTY, and for the supervision, training, instruction, discipline, control, and conduct of said employees.

9. JANETTE VILLA, CWS Caseworker, an individual; TOREE RUIZ, CWS Caseworker, an individual; JANEA AYALA, CWS Caseworker, an individual; CHRISTOPHER TAYLOR, Social Work Supervisorm an individual; MARY SHEHEE, Social Work Supervisor, an individual; LILIANA IRIBE-MORENO,

3

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

CWS Caseworker, an individual; JADE NIETO, Social Work Supervisor, an individual; NICK MACCHIONE, Agency Director, an individual.

10. DOES 1 THROUGH 10 were Social Workers, Social Work Supervisors, and employees or were otherwise able to act under color of law on behalf of COUNTY. By so acting under color of law, DOES 1 through 10 engaged in wrongful conduct which caused injuries to PLAINTIFFS as alleged infra.

11. PLAINTIFFS are ignorant of the true names and capacities of those Defendants sued herein as DOES 1-10, and for that reason has sued Defendants by such fictitious names. PLAINTIFFS will seek leave of court to amend this complaint to identify said Defendants once their identities are known.

## STATEMENT OF FACTS

12. On October 20, 2020, there was an incident at the PLAINTIFFS' residence in Chula Vista, California when MICHELLE, felt threatened by MICHAEL, and telephoned 911 for assistance. The only physical injury consisted of a broken fingernail. The CHULA VISTA POLICE DEPARTMENT officers did not find that the children were in need of protective custody and left them in the care of their mother, MICHELLE.

13. CHULA VISTA POLICE arrested MICHAEL and released him the next morning. MICHAEL returned home the next day, and the prosecutor eventually dropped the charges. There have been no further incidents since this date.

14. Before and after this incident, both MICHAEL and MICHELLE shared and continue to share a loving bond with the children, T.E.W., T.A.W., and M.J.G.

15. On October 30, 2020, the COUNTY, represented by Caseworkers TOREE RUIZ, and JENEA AYALA visited the family's home, and demanded that the parents sign a "Safety Plan." MICHELLE was in a vulnerable state due to the recent incident and the surprise COUNTY visit, and the signing of the "Safety Plan" was

4

under duress and undue influence. The social workers would not leave without a signed "Safety Plan."

16. MICHAEL reported that his signing of the "Safety Plan" was "under duress" and he wrote "under duress" next to his signature, before being forced to leave the family home by the COUNTY to live separately from the family in a travel trailer in an RV camping park in Jamul, California.

17. On October 26, 2020, the DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT IN LINCOLN COUNTY issued a Default Order for divorce.

18. The COUNTY contrived a "Safety Plan" they coerced MICHAEL and MICHELLE to sign ousting MICHAEL from the family home and establishing an unworkable visitation schedule for the children.

19. On November 9, 2020, there was a Child and Family Team Meeting held with both MICHAEL and MICHELLE present, as well as ADRIANA JOHNSON, the sister-in-law of MICHELLE. Also present were Defendant Caseworkers TOREE RUIZ, JENEA AYALA, and other unnamed "supervisors" from the COUNTY.

20. Even though MICHAEL was the one accused of domestic violence, the COUNTY inexplicably attributed "red flags" and "conflict" to MICHELLE instead of MICHAEL.

21. ADRIANA JOHNSON was present at the Child and Family Team Meeting because she volunteered to check on the family. ADRIANA JOHNSON reported to MICHELLE that after the parents left the Child and Family Team Meeting on November 9, 2020, that the COUNTY agency personnel present at the meeting expressed an intention to remove the children from both parents because MICHAEL was not talking about the children, they disliked MICHAEL, and they were concerned about MICHAEL's alleged "narcissism."

22. The COUNTY made the decision not to offer the family voluntary services, but to pursue court options by the close of the Child and Family Team meeting that day.

5

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

23. The COUNTY's accusations included alleged violations of the untenable "Safety Plan" visitation schedule. The COUNTY alleged no other violations except a few occasions when MICHAEL brought the children's bicycles upstairs to the storage shed of the apartment after visitation. None of the alleged "violations" of the Safety Plan put anyone in any kind of danger.

24. On November 9, 2020, the parents came up with their own Safety Plan, which allowed for changes in visitation without COUNTY involvement. Unfortunately, the COUNTY still accused the parents of "Safety Plan" violations even when changing the visitation schedule did not violate the new plan.

25. On November 13, 2020, MICHELLE filed for a restraining order against MICHAEL in the Superior Court of California, County of San Diego, Chula Vista, (Case 20FDV05420S) at the urging of the COUNTY, to avoid threatened removal of the children. The COUNTY used both duress and undue influence to accomplish this through misrepresentations to MICHELLE that the COUNTY would remove the children from the home if MICHELLE did not seek a Restraining Order against MICHAEL.

26. On November 13, 2020, the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, CHULA VISTA issued a Temporary Restraining Order that included MICHELLE and all the MINOR children, T.E.W., T.A.W. and M.J.G. The Court also issued a Child Custody and Visitation Order. Although MICHELLE requested unsupervised visitation for MICHAEL with M.J.G., Judge Michael J. Popkins ordered no visitation with any of the children until the hearing on December 3, 2020.

27. On November 16, 2020, the District Court of the THIRD JUDICIAL DISTRICT IN LINCOLN COUNTY, WYOMING issued a full Decree of Divorce. The Decree of Divorce granted primary custody of M.J.G. (the parties' child together) to MICHELLE with reasonable rights of visitation to MICHAEL. The Decree

6

also established child support for M.J.G. The custody of MINORS T.E.W. and T.A.W. was not addressed in this order because MICHAEL had no legal standing or legal rights to those children in the State of Wyoming

28. On November 20, 2020, the COUNTY filed a Juvenile Dependency Petition at the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT for all three children, T.E.W., T.A.W., and M.J.G.

29. The COUNTY filed this petition even though there was a current Restraining Order in place, the parents had separated and divorced, and MICHELLE and the children had been in counseling for weeks. The COUNTY contended, under oath, that the parents had "failed to protect the children" under Cal. Wel. and Inst. Code § 300(b)(1).

30. The COUNTY falsely reported that the MINORS were "exposed to violent confrontations" when they were not and falsely reported that MICHELLE had a "history of domestic violence in the presence of the children" which is also untrue. MICHELLE was never and is not the perpetrator of Domestic Violence. The MINORS were never and are not witness to any violent confrontations. The COUNTY also falsely accused the parents of violating two "Safety Plans", which they had not. The parents merely made changes to the visitation schedule as needed, and MICHAEL had brought the children's bicycles up to the storage shed next to MICHELLE's apartment.

31. MICHAEL and MICHELLE both denied the allegations of the COUNTY's petition because the allegations were unfounded, fabricated, supported by false evidence, and untrue.

32. On November 23, 2020, the COUNTY knowingly, willfully, and maliciously perjured their "Detention Report" on behalf of the COUNTY, supposedly to "protect" the children. The COUNTY knowingly submitted this false report to

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT.

33. The COUNTY made false accusations that MICHAEL and MICHELLE "emotionally abused" the children and that the parents exposed the MINORS to a violent confrontation (which they did not). The Agency acknowledged that there had been no further incidents.

34. During the interview that was the basis for DEFENDANT Caseworkers TOREE RUIZ, and JENEA AYALA's "Detention Report," MICHELLE informed Defendant Caseworkers RUIZ and AYALA that MICHELLE had left ex-husband CYRUS CAMPBELL because of extensive abuse by CYRUS of MICHELLE and the five children of the marriage (three of which were then adults).

35. MICHELLE informed Defendant Caseworkers RUIZ and AYALA that there was extensive independent evidence of abuse by CYRUS CAMPBELL against MICHELLE including restraining orders out of Utah and Wyoming, pictures of the bruises and injuries of the children, and statements of the Guardian Ad Litem (GAL) verifying the abuse based on interviews with the children.

36. MICHELLE gave Caseworkers RUIZ and AYALA information about the Courts where they could obtain such information in Utah and Wyoming, as well as about the involvement of UTAH DEPARTMENT OF CHILD AND FAMILY SERVICES in the case.

37. The SECOND DISTRICT COURT OF OGDEN, UTAH issued a Protective Order against CYRUS CAMPBELL on 8/20/2007 effective for one year (Case 074901436). The UTAH DEPARTMENT OF CHILD AND FAMILY SERVICES investigated Mr. Campbell for child abuse several times from 1996 to 2008, substantiating abuse cases against MR. CAMPBELL twice, first on September 1, 1996 for physical abuse for shaking then minor child K.R.C. born

8

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

in 1996 who was a two-month-infant at the time, and second on July 17, 2007 for physical abuse for striking then-minor children S.G.C. born in 2001 and J.T.C. born in 2003 and leaving bad bruises. The CIRCUIT COURT, TETON COUNY, OF JACKSON WYOMING issued another Permanent Protective Order (Case 2011-11) on 10/06/2011 good for one year. MICHELLE divorced CYRUS CAMPBELL, in the TETON COUNTY NINTH DISTRICT COURT. The Court issued a final Decree of Divorce on April 20, 2012.

38. Caseworkers RUIZ and AYALA failed to either obtain this information at all or failed to include this exculpatory evidence in their "Detention Report." Either situation represents fraud, perjury, and a gross misrepresentation of the truth in DEFENDANT RUIZ and AYALA's "Detention Report" submitted to the Juvenile Court on November 23, 2020.

39. MICHELLE informed caseworkers RUIZ and AYALA that her ex-husband, CYRUS CAMPBELL, continually lied to the children of the marriage, denying that any of this well-documented abuse happened, and that the children were alienated from their mother MICHELLE as a result. CYRUS CAMPBELL repeatedly falsely denied the abuse he perpetrated against both MICHELLE and the children, calling MICHELLE "crazy" and "a liar" in front of the children.

40. DEFENDANT Caseworkers RUIZ and AYALA nonetheless asked MICHELLE for the phone numbers of CYRUS CAMPBELL and the adult children from the first marriage. MICHELLE gave COUNTY Caseworkers RUIZ and AYALA the information, assuming DEFENDANT Caseworkers would consider all evidence and act in the best interests of the children in their investigation. This assumption proved to be naïve and tragically incorrect.

41. Defendant caseworkers RUIZ AND AYALA proceeded to call MICHELLE's ex-husband CYRUS CAMPBELL to interview him and the adult children of the marriage, and took their statements, falsely presenting them to the SUPERIOR

9

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT as truthful representations of past events.

42. Caseworkers RUIZ and AYALA presented the untruthful, hearsay statements of CYRUS CAMPBELL and the adult children of MICHELLE as true and reliable evidence to the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT. They submitted this false information even though they knew, or should have known, that those statements were false, and against the great weight of the extensive documented evidence of abuse by CYRUS CAMPBELL against MICHELLE and the children as detailed above. Nearly the entirety of the statements in the Detention Report from CYRUS CAMPBELL, ALEXIS IBANEZ, KAITLYNN HAUTALA, and SAMANTHA CAMPBELL were false. Not even the names of the interviewees were spelled correctly.

43. Caseworkers RUIZ and AYALA knowingly, willfully, and maliciously presented this perjured information to the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT in their "Detention Report" on November 23, 2020.

44. As a result, the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT granted the COUNTY Temporary Emergency Jurisdiction of all three children, T.E.W., T.A.W and M.J.G. to the COUNTY. Both MICHAEL and MICHELLE denied the false charges presented by the COUNTY despite pressure from the COUNTY to admit the falsified charges.

45. At this point, the Juvenile Court ordered the parents MICHAEL and MICHELLE to live separately, abide by the existing restraining order, provide family information to caseworkers, not to leave the County of San Diego with the children, and to attend a dispositional hearing on December 17, 2020.

10

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

46. On December 3, 2020, a Permanent Restraining Order was issued by the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, CHULA VISTA, (Case 20FDV05420S) for MICHELLE against MICHAEL. The Court removed the children from the case because the Juvenile Court now had jurisdiction over the children.

47. At the dispositional hearing on December 17, 2020, it was found that the jurisdiction and disposition hearing was set past the statutory time frame (60 days), that exceptional circumstances for this existed, that the pretrial status conference was to be held on February 3, 2021, and the Contested Adjudication and Disposition Hearing would be held on February 19, 2021.

48. At this point, Caseworkers RUIZ and AYALA were unassigned from the case by the COUNTY, and the COUNTY assigned Caseworker JANETTE VILLA as the new Caseworker.

49. On January 28, 2021, another Child and Family Team Meeting was held by the COUNTY. ADRIANA JOHNSON, MICHELLE's sister-in-law, refused further participation in the case because ADRIANA did not agree with the previous actions and statements of the COUNTY. This meeting was attended by MICHELLE, Caseworker VILLA, various other unknown supervisors from the COUNTY, and MICHELLE's sister SUSAN LEATHAM. The COUNTY excluded MICHAEL from the meeting because of the Restraining Order issued on December 3, 2020, and no equivalent Meeting was held with Michael.

50. In this Meeting, the COUNTY discussed that MICHELLE and the children were participating in all recommended services. The COUNTY called the children "neglected" and "witnesses to family violence" in the CANS assessment, which MICHELLE denied on the record.

51. In the resulting "Addendum Report" presented by Defendant Caseworker VILLA to the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO,

11

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

MEADOWLARK JUVENILE COURT, caseworker VILLA reported to the Court false hearsay statements about both parents and said there was continued violence between the parents, even though there was no evidence of any violence.

52. The COUNTY indicated continuing concerns for the safety of the children, giving no evidence to support these "concerns." At the Child and Family Team Meeting on January 28, 2021, the COUNTY discussed no such concerns. MICHELLE and the children T.E.W., T.A.W and M.J.G. were engaging in services as directed by the COUNTY, but MICHAEL refused to participate in any Domestic Violence services.

53. THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT had a Pretrial Conference Hearing on February 3, 2021. The Juvenile Court confirmed jurisdiction and set the Contested Adjudication and Disposition Hearing for February 19, 2021.

54. On February 19, 2021, the COUNTY, through Caseworker VILLA, submitted another "Addendum Report" on February 19, 2021. Parents' counsel, minors' counsel and the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT did not have adequate time to review the report before the hearing that day. The COUNTY habitually submitted its reports too late for review of other parties or the Juvenile Court before the hearings.

55. The SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT made a true finding on the petition filed by the COUNTY on November 20, 2020, based on the false evidence submitted by the COUNTY as detailed above. The court ordered placement of T.E.W., T.A.W. and M.J.G. with MICHELLE and ordered "family maintenance services."

12

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

56. The court found MICHELLE's progress to be "minimal" despite arranging and nearly completing all services for herself and the children by the date of the Contested Jurisdictional and Dispositional Hearing. The COUNTY offered no supporting evidence for this finding, which was completely inconsistent with MICHELLE's and the children's faithful participation in counseling and services MICHELLE arranged for herself and the children.

57. The COUNTY had failed to offer any services to the family at this point in the case, even though the Petition filed by the COUNTY was over three months old.

58. The Court ordered "reunification services" for MICHELLE and the MINORS, even though the COUNTY did not physically remove the children from the home. The Court found MICHAEL's progress to be minimal as well, which was consistent with his continued refusal to participate in services. The Juvenile Court ordered that MICHELLE did not have to pay attorney fees. A family maintenance review was set for August 18, 2021.

59. MICHAEL and MICHELLE immediately appealed the dispositional findings of the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT on February 19, 2021, via their counsel. MICHELLE appealed the disposition order on February 24, 2021, and MICHAEL appealed the disposition order on March 4, 2021.

60. Until the time of the COUNTY'S unlawful seizure of the legal custody of the minors T.E.W, T.A.W. and M.J.G. on February 19, 2021, the children enjoyed a mutually beneficial and loving relationship with both parents. The COUNTY's seizure of the parents' legal custody of their children through the submission of false information to the Juvenile Court was completely unjustified and malicious.

61. Shortly after the Dispositional Order on February 19, 2021, the COUNTY again changed the children's Caseworker to LILIANA IRIBE-MORENO. The COUNTY still provided no meaningful services to any family members as

13

ordered by the Court, and MICHELLE and the children completed their self-arranged services with South Bay Community Services in March 2021.

62. On May 19, 2021, Caseworker IRIBE-MORENO submitted an "Interrim Report" to the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT.

63. In this report, Caseworker IRIBE-MORENO reported speaking to MICHELLE's visiting out-of-state then minor child, J.T.C., age 17, without MICHELLE'S consent or knowledge.

64. On May 19, 2021, the court ordered that the COUNTY begin the Interstate Compact for the Placement of Children (ICPC) process because the entire family, MICHAEL, MICHELLE, T.E.W., T.A.W AND M.J.G., had requested to move back home to Wyoming through their respective counsel. The Juvenile Court scheduled a hearing for June 21, 2021, to address the family's desired move back to Wyoming.

65. On May 20, 2021, MICHELLE notified the COUNTY that she had traveled back to Wyoming to seek a job and housing for herself and the children. MICHELLE had obtained both by June 15, 2021, and immediately informed caseworker IRIBE-MORENO of this fact. MICHELLE also arranged childcare and medical, vision and dental appointments for the children, and enrolled the children in school for the next fall.

66. On June 21, 2021, the COUNTY, through Caseworker IRIBE-MORENO, submitted an Addendum Report. This report focused on the family's plans to move back to Wyoming, supported by all parents' and minors' attorneys, but still inexplicably opposed by the COUNTY. The COUNTY said the parents were not taking the children's wishes into account, even though all MINOR children independently expressed to their counsel a desire to move back to Wyoming. The Court ordered the COUNTY to begin the ICPC process.

14

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

67. On July 20, 2021, the COUNTY submitted another "Addendum Report" via Caseworker IRIBE-MORENO to THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT. This report again reiterated the COUNTY'S position to have the children stay in San Diego so the children could be "supervised" by the COUNTY, despite the COUNTY'S complete inability to provide any meaningful services, support, or assist the children in any way, and the entire family's desire to move away from California to escape the oppression of the COUNTY.

68. On July 20, 2021, the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT ordered that the COUNTY allow the parents and children to move to Wyoming and to transfer supervision of the children to Wyoming. The Court ordered the creation of a Safety Plan by the COUNTY, with family members near Wyoming, and that the Maintenance Review scheduled for on August 18, 2021, remain on the schedule.

69. On July 27, 2021, MICHAEL and the children moved to Wyoming, with MICHAEL living in his camper on the family property, and the children living with MICHELLE in the rented house.

70. On August 17, 2021, THE COURT OF APPEAL, FOURTH APPELLATE DISTRICT, DIVISION ONE, STATE OF CALIFORNIA issued a joint decision on the separate appeals in the case. The decision was in favor of the parents MICHAEL and MICHELLE, and Judge Rohanee Zapanta of the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT was directed to reverse all findings and dismiss the entire petition based on a lack of evidence for a finding under Cal. Wel. and Inst. Code § 300(b)(1) at the time of jurisdiction on February 19, 2021.

71. On August 18, 2021, the COUNTY, through Caseworker IRIBE-MORENO, submitted another "Addendum Report." This report focused on possible Indian

15

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

Child Welfare Act (ICWA) issues, and then focused on the parents' "lack of compliance with court orders." It was not specified how this was the case, and no evidence for violation of any court orders was offered.

72. Caseworker IRIBE-MORENO, in the interview for this Addendum Report, demonstrated to MICHELLE a complete lack of understanding of the dynamics of Domestic Violence by stating that only the children were victims of Domestic Violence, and that MICHELLE was not a victim. Caseworker IRIBE-MORENO incorrectly identified the Domestic Violence in the present case as "mutual." MICHELLE urged Caseworker IRIBE-MORENO to review information about the power and control dynamics of Domestic Violence.

73. Caseworker IRIBE-MORENO's complete lack of knowledge of the power and control dynamics of Domestic Violence, as evidenced by her suggestion that the Domestic Violence in this case was "mutual," was both disturbing and dangerous for the Domestic Violence Survivors and their children Caseworker IRIBE-MORENO was working with at the time, including the PLAINTIFFS in the present case. The Restraining Order issued on December 3, 2020, by the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, CHULA VISTA (Case 20FDV05420S) clearly listed MICHELLE as the victim of Domestic Violence. The COUNTY had a copy of this order, and there was no indication in the order whatsoever that the Domestic Violence was "mutual."

74. The COUNTY continued to recommend the children come back to San Diego, and that the parents were making "minimal" progress with the case plan. The case was then 12 months away from Termination of Parental Rights of both parents, despite MICHELLE's and the children's complete cooperation with and participation in all services they had to arrange for themselves. The COUNTY submitted this "Addendum Report" to the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE

16

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

COURT on August 18, 2021, even though by that point the case was ordered reversed and dismissed.

75. On August 18, 2021, the Court issued a Stipulated Remittitur.

76. On August 20, 2021, Judge Rohanee Zapanta of the SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO, MEADOWLARK JUVENILE COURT reversed and dismissed the case as ordered by THE COURT OF APPEAL, FOURTH APPELLATE DISTRICT, DIVISION ONE, STATE OF CALIFORNIA.

77. It was at this time, on August 20, 2021, that the COUNTY terminated involvement with the family, and violation of the entire family's civil rights under 42 U.S.C. §1983 and other federal and state laws finally ended. The COUNTY'S violation of civil rights under 42 U.S.C. § 1983 and other federal and state laws against the entire family (MICHEAL, MICHELLE, T.E.W., T.A.W., and M.J.G.) occurred continually from October 20, 2020, to August 20, 2021, for a period of ten (10) months.

**FIRST CAUSE OF ACTION: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 FIRST AMENDMENT RETALIATION BYALL PLAINTIFFS AGAINST ALL DEFENDANTS**

78. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

79. ALL PLAINTIFFS are citizens of the United States, protected by 42 U.S.C. § 1983.

80. Under 42 U.S.C. §1983, the First Amendment of the U.S. Constitution prohibits retaliation by the government, including the COUNTY, for citizens engaging in protected First Amendment expression. This generally includes criticism of the government, including the COUNTY, unless such criticism includes fighting words inciting violence, the risk of imminent violence, or a national security risk.

17

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

81. Here, Defendants RUIZ and AYALA were acting under color of state law when they wrongfully acted, or failed to act, and conspired as set forth herein.

82. When MICHAEL and MICHELLE criticized Caseworkers RUIZ and AYALA for their mishandling of the initiation of the case through the use of fraud, duress and coercion to get the "Safety Plan" signed, by submitting a false and misleading "Detention Report", and by committing perjury and presenting false evidence to the Juvenile Court through making invalid assumptions and not doing through fact-checking and/or ignoring exculpatory evidence throughout the case, the DEFENDANTS engaged in retaliatory behavior against all PLAINTIFFS by removing their familial rights of association through the unlawful seizure of the legal custody rights to the MINOR children.

83. Beginning on October 30, 2020, Caseworkers RUIZ and AYALA conspired to retaliate against MICHAEL and MICHELLE for the exercise of their legal rights under the First Amendment to free expression.

84. In retaliation against MICHAEL AND MICHELLE'S exercise of their legal rights under the First Amendment to object to, refuse recommendations of the COUNTY, or complain about the conduct of the COUNTY and its social workers, Defendants RUIZ and AYALA initiated and conducted investigations and proceedings, and related matters and conduct, to interfere with the civil rights of MICHAEL and MICHELLE as alleged above.  DEFENDANTS wrongly used fraud, duress, and undue influence to interfere with the legal custodial rights of MICHAEL and MICHELLE to the MINOR PLAINTIFFS, T.E.W., T.A.W., and M.J.G.

85. Both MICHAEL and MICHELLE insisted a "Safety Plan" was unnecessary, however they eventually signed the plan due to the duress and undue influence exerted by RUIZ and AYALA by threatening to take the children away if the parents did not sign the COUNTY'S "Safety Plan."

18

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

86. MICHAEL and MICHELLE are informed and believe, and based thereon allege, that RUIZ and AYALA'S actions were without any justifiable or reasonable cause, and with an intent to cause injury to MICHAEL and MICHELLE, with a willful and conscious disregard of MICHAEL and MICHELLE's rights and/or safety.

87. MICHAEL and MICHELLE are informed and believe that RUIZ and AYALA acted without proper reason or authority, without reasonable probable cause, and with deliberate indifference to MICHAEL and MICHELLE's rights, including retaliating against MICHAEL and MICHELLE's exercise of their right to assert their freedom of speech rights including the right to object to, refuse and complain about the conduct and threats and interference by the COUNTY to get their "Safety Plan" signed, intending to violate the PLAINTIFF's rights as protected by the United States Constitution and other laws.

88. As a direct result of the violations of Defendants RUIZ and AYALA, and in accordance with 42 U.S.C. §1983, MICHAEL and MICHELLE's civil rights have been violated as detailed above. MICHAEL and MICHELLE have suffered and will continue to suffer damages, including but not limited to, physical and/or mental anxiety and anguish, lost scholarships, additional expenditures to move and start over in school, excessive travel expenses related to the restriction from leaving San Diego County with the children, and lost wages. MICHAEL and MICHELLE will also incur attorneys' fees, costs, and expenses in the case, and in the matter as authorized by 42 U.S.C. § 1988, in an amount not yet ascertained, all of which shall be shown according to proof at trial.

89. The wrongful conduct of Defendants RUIZ and AYALA was intentional, done with malice, and with conscious disregard for MICHAEL and MICHELLE's rights, and because of this despicable conduct, MICHAEL and MICHELLE are

19

entitled to recover punitive, compensatory, and other damages in an amount to be proven at the time of trial.

**SECOND CAUSE OF ACTION: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 FIRST AMENDMENT FAMILIAL ASSOCIATION BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS AND DOES 1 THROUGH 10**

90. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

91. PLAINTIFFS are individuals and citizens of the United States, protected by 42 U.S.C. § 1983.

92. Under 42 U.S.C. §1983, the government, including the COUNTY, is prohibited from intruding into a familial relationship as retaliation for family members' exercise of free speech rights.

93. Here, the COUNTY interfered with familial association both by wrongly assuming legal custody of the MINOR PLAINTIFFS as retaliation for criticism of the COUNTY by the parents, and consequentially by preventing all PLAINTIFFS from utilizing family support systems by prohibiting the travel of the parents outside of San Diego County with the children. This necessitated flying family members to San Diego at great expense and hardship to the family, and it could be done only once over the 10 months period of the case.

94. PLAINTIFFS allege that the right to familial association guaranteed under the First Amendment is "clearly established" such that a reasonable social worker in the DEFENDANTS' situation would know it is unlawful to remove a child from their familial associations in the absence of exigent circumstances.

95. DEFENDANTS had at all times relevant to the present complaint, an affirmative duty to conduct themselves in a manner that confirms, provides for, and does not violate the protections guaranteed PLAINTIFFS under the United States Constitution, including those under the First Amendment, to include, without

20

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

limitation, the protection of parental rights, the right to privacy, family integrity, and the right to familial relations.

96. DEFENDANTS were each acting under the color of state law when they acted, or knew and agreed, and/or conspired to violate PLAINTIFFS' civil rights by, but not limited to taking legal custody of the children from their parents, preventing the children from visiting their siblings who live out of state without express permission of the COUNTY, and taking away the decision-making power for the children from the parents without either or both of proper, or just, cause or authority, thereby violating PLAINTIFFS' rights under the First Amendment of the United States Constitution.

97. DEFENDANTS each maliciously violated, conspired, or both, to violate the civil rights of PLAINTIFFS. DEFENDANTS each acted deliberately or with callous or reckless indifference to the substantial rights of PLAINTIFFS or inspired by an evil motive or intent to withhold family support from the PLAINTIFFS as described above.

98. As a direct and proximate result of DEFENDANTS' actions, and each of their misconduct, PLAINTIFFS have suffered, and will continue to suffer general and special damages according to proof at trial, including physical and mental effects, anxiety and anguish, financial losses, and other things.

99. The wrongful and despicable conduct of the individually named DEFENDANTS, and the conduct of each of them, as herein alleged was done with malice, oppression, or fraud, with a callous or reckless indifference to the rights of PLAINTIFFS, or motivated by an evil intent, such that PLAINTIFFS are entitled to recover punitive, compensatory, and other damages in accordance with law and subject to proof at trial.

21

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

**THIRD CAUSE OF ACTION: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 FOURTH AMENDMENT BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS AND DOES 1 THROUGH 10**

100. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

101. ALL PLAINTIFFS are citizens of the United States, protected by 42 U.S.C. § 1983.

102. Under 42 U.S.C. §1983, the government, including the COUNTY, is prohibited from search or seizure without consent, a warrant, or probable cause that a crime has been committed.

103. Here, DEFENDANTS seized the legal custody rights to the MINOR children without consent, a warrant, probable cause, or evidence of abuse of the children. The Appellate Court's decision to reverse and dismiss the case due to a lack of evidence demonstrates this.

104. On October 30, 2020, Defendants RUIZ and AYALA utilized threats of removing the children to exert duress and undue influence to obtain MICHAEL and MICHELLE's signature on the "Safety Plan."

105. Following the implementation of the "Safety Plan," Caseworkers RUIZ and AYALA continued to utilize such threats of removal of the children to secure false testimony from MICHELLE's ex-abuser and adult children to use against MICHAEL and MICHELLE in their "Detention Report" submitted to the Court to obtain the Temporary Emergency Jurisdiction Order on November 20, 2023. The COUNTY obtained this information through duress and undue influence as described above.

106. The aforesaid conduct of DEFENDANTS RUIZ and AYALA led the COUNTY to violate the civil rights of the children T.E.W., T.A.W., and M.J.G. as found in the Fourth Amendment of the United States Constitution and as enforced under 42 U.S.C. § 1983 by, but not limited to, acting, and conspiring to seize and

22

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

detain the legal custody of T.E.W., T.A.W., and M.J.G. without proper or just cause, and through fraud and coercion. These actions were in violation of the PLAINTIFFS' Fourth Amendment right against unreasonable searches and seizures.

107. The DEFENDANTS effected the removal of the children T.E.W., T.A.W., and M.J.G. from the legal custody of their parents for 10 months without just cause, without parental consent, as retaliation for their parents' exercise of free speech objecting to the "Safety Plan" and other wrongful COUNTY actions, all of which was in violation of the MINORS Fourth Amendment right against unreasonable searches and seizures.

108. Each DEFENDANT conspired to interfere with, and did violate the civil rights of the MINORS, as set forth under 42 U.S.C.§ 1983 and the Fourth Amendment of the United States Constitution by conspiring to submit false information from the MINOR CHILDREN and others as described above to the Juvenile Court to obtain legal custody of the MINORS.

109. Each DEFENDANT was acting under the color of the state law when they conspired to submit false information to the Court to obtain legal custody of the MINORS.

110. Each DEFENDANT was acting under the color of the state law when they conspired to violate the fourth amendment rights of MICHAEL and MICHELLE when they wrongly seized the legal custody rights of the MINORS by knowingly submitting false evidence to the Juvenile Court as described above through false testimony of MICHELLE's ex-abuser and adult children and failure to present exculpatory court evidence of the abuse in two states as detailed above.

111. DEFENDANTS had, and have, an affirmative duty and obligation to recognize, acknowledge, and respect the constitutional rights of PLAINTIFFS, and to

23

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

conduct themselves in a manner that confirms and provides for the preservation of their Constitutional rights. These rights include, without limitation, the right to privacy and family integrity all arising under the First, Fourth, and Fourteenth Amendments to the United States Constitution. Moreover, those employee DEFENDANTS who, in their official capacity had supervisory and/or policy making authority, shared duties identical to those of their respective employers.

112. Therefore, each DEFENDANT engaged in wrongful conduct as herein alleged, which was intentional, done with malice, and with conscious disregard for the rights of the PLAINTIFFS herein, and because of their deplorable conduct, PLAINTIFFS are therefore entitled to receive punitive, compensatory and other damages from the said individual DEFENDANTS' wrongful acts according to the amount of the Defendants' wealth.

## FOURTH CAUSE OF ACTION: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 14TH AMENDMENT BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS AND DOES 1 THROUGH 10

113. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

114. ALL PLAINTIFFS are citizens of the United States, protected by 42 U.S.C. §1983.

115. Under 42 U.S.C. §1983, the government, including the COUNTY, is prohibited from "depriving any person of life, liberty or property without due process of law, nor deny to any person within it's' jurisdiction the equal protection of the laws." U.S. Const. Amend XIV.

116. Here, the COUNTY deprived ALL PLAINTIFFS from having familial association by stripping away their legal custody rights to the MINOR PLAINTIFFS for a period of 10 months. For this period, PLAINTIFFs had unreasonable restrictions, such as not being able to temporarily leave San Diego County with the children, submission to monthly in-home interrogations, and

24

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

submission to participation in services without adequate justification or evidence. The COUNTY interfered with the liberty of the PLAINTIFFS in these ways as well as other ways detailed above and elsewhere in this complaint.

117. DEFENDANTS also interfered with the PLAINTIFFS' due process rights by knowingly presenting false evidence to the Juvenile Court that suggested MICHELLE had made up the previous Domestic Violence allegations or was abusive to the children in other ways. The COUNTY had access to objective evidence this was untrue and failed to investigate or include this exculpatory evidence in its reports to the JUVENILE COURT, and instead knowingly submitted false testimony and false evidence in support of the DEFENDANTS' case as detailed above.

118. DEFENDANTS also engaged in violation of the equal protection under the law offered by the Fourteenth Amendment by filing a complaint against MICHELLE for the sole reason that she was a Domestic Violence Survivor. This was the COUNTY'S only evidence for its' allegation. Unequal application of Cal. Wel. and Inst. Code § 300(b)(1) to MICHELLE simply based on being a Domestic Violence Survivor is a clear violation of MICHELLE's and the MINOR's civil rights under the Fourteenth Amendment's equal protection clause.

119. The right to familial association guaranteed under the Fourteenth Amendment is "clearly established" such that reasonable Social Workers in DEFENDANTS' situation would know it is unlawful to present false evidence to a court to achieve the taking of legal custody of a child from a parent.

120. DEFENDANTS had, at all times relevant herein, an affirmative duty and obligation to conduct themselves in a manner that affirms and does not violate the Constitutional protections guaranteed to MICHAEL and MICHELLE, including those under the Fourteenth Amendment, to include the protection of

25

parental rights, the right to privacy, the right to family integrity, and the right to familial relations.

121. DEFENDANTS were each acting under the color of state law when they conspired to present false evidence to the Court to violate MICHAEL and MICHELLE's civil rights without proper or justification or just cause, thereby violating MICHAEL and MICHELLE's rights under the Fourteenth Amendment of the United States Constitution.

122. DEFENDANTS had no reasonable basis for believing the MINORS were in immediate danger of sustaining serious bodily injury or death at the time of initial contact with the family on October 20, 2020, or at the time of jurisdiction on February 19, 202, under Cal. Wel. and Inst. Code § 300(b)(1).

123. The DEFENDANTS' submission of false evidence to the court as stated above, along with the lack of exigent circumstances in the case highlight the DEFENDANTS' complete lack of tangible evidence to prove their case. The DEFENDANTS' reliance on false evidence/testimony and willingness to hide exculpatory evidence as detailed above highlights the DEFENDANTS' complete disregard for the Fourteenth Amendment rights of all PLAINTIFFS.

113. The COUNTY failed to pursue a less intrusive means for helping the family in the form of voluntary services first and went straight to proceedings intended to terminate the parental rights of MICHAEL and MICHELLE because of DEFENDANTS' malicious intent.

114. MICHAEL and MICHELLE are informed, and believe, and based thereon allege that these actions were taken without just or reasonable cause, and with an intent to cause injury to all PLAINTIFFS' rights and safety.

115. DEFENDANTS each maliciously violated and/or conspired to violate the civil rights of MICHAEL and MICHELLE, including violations of their rights found in the Fourteenth Amendment of the United States Constitution. These acts, as

26

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

described above, were conducted deliberately, with callous or reckless indifference to the substantial rights of MICHAEL and MICHELLE or inspired by an evil motive or intent.

116. As a direct and proximate result of the DEFENDANTS' misconduct, MICHAEL and MICHELLE have suffered and will continue to suffer general and special damages according to proof at trial, including physical and mental anguish and financial losses.

117. The wrongful and deplorable conduct of all DEFENDANTS and DOES 1 THROUGH 10 was intentional, done with malice, oppression, or fraud, with a callous or reckless indifference to the rights of PLAINTIFFS, or inspired by an evil motive or intent, such that PLAINTIFFS are entitled to recover punitive, compensatory, and other damages, in accordance with law and subject to proof at trial.

**FIFTH CAUSE OF ACTION: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 FOURTEENTH AMENDMENT DUE PROCESS RIGHTS TO BE FREE FROM DECEPTION IN THE PRESENTATION OF EVIDENCE TO THE JUVENILE COURT BY PLAINTIFFS AGAINST ALL DEFENDANTS**

118. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

119. ALL PLAINTIFFS are citizens of the United States, protected by 42 U.S.C. § 1983.

120. Under 42 U.S.C. §1983, the Fourteenth Amendment protects citizens against being subjected to adjudication by the government, including the COUNTY, because of false evidence that was deliberately submitted or fabricated.

121. Here, the DEFENDANTS deliberately submitted interviews with MICHELLE'S ex-abuser and adult children they knew to be false and submitted fabricated evidence transferring the responsibility for the Domestic Violence from the perpetrator to the Survivor.

27

122. PLAINTIFFS are informed and believe, and thereon allege that, at all times relevant herein, there existed a clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government, such that reasonable Caseworkers in the DEFENDANTS' positions would know it is unlawful to lie, fabricate evidence, and/or suppress material exculpatory evidence in court reports or any other document filed with the juvenile court to influence judicial decision making.

123. DEFENDANTS had the affirmative and obvious duty to be truthful, accurate, and complete in petitions, report and documents submitted to a sovereign court with power to adjudicate substantial rights, including parental rights, and to refrain from using improper, inflammatory, and deceptive means to obtain judicial support of recommendations seeking to disparage PLAINTIFFS' liberty interests.

124. In including knowingly false information and/or omitting exculpatory evidence regarding the false testimony of MICHELLE's ex-abuser and adult children and failure to present the extensive evidence of abuse available to DEFENDANTS, all DEFENDANTS were acting under the color of state law when they acted, or knew and agreed and thereby conspired, to knowingly present false allegations, false or coerced testimony, fabricated evidence and/or to suppress exculpatory evidence before the Juvenile Court, thereby violating PLAINTIFFS' rights found in the First, Fourth and Fourteenth Amendments of the United States Constitution and breaching their duty to PLAINTIFFS.

125. All DEFENDANTS and DOES 1 THROUGH 10 either singularly or jointly acted and/or conspired to deliberately or recklessly present false statements and/or omit known exculpatory evidence in the Juvenile Dependency Petition, Detention Reports and Addendum Reports filed in the Juvenile Court as detailed above. This deception caused the children to be removed from the legal custody

28

of their parents for a period of 10 months until the appellate court ordered the case to be reversed and dismissed on August 17, 2021.

126. Had the Appellate Court not intervened, it is likely that the parents' rights would have been wrongfully terminated based on the misrepresentation of the COUNTY to the Juvenile Court regarding both misrepresentation by the COUNTY of past abuse of MICHELLE by her ex-abuser and progress in services by both MICHELLE and the children.

127. It is well settled that a Social Worker may not misrepresent facts or omit material information from reports submitted to the Juvenile Court.

128. As a direct and proximate cause of these DEFENDANTS' violations, and in accordance with 42 U.S.C. § 1983, PLAINTIFFS' civil rights have been violated in that they have suffered and will continue to suffer general and special damages in an amount not yet ascertained, but which shall be shown according to proof at trial.

129. The wrongful and deplorable conduct of the social worker DEFENDANTS was intentional, reckless, malicious, oppressive, and fraudulent with callous indifference to the rights of PLAINTIFFS such that PLAINTIFFS are entitled to recover punitive, compensatory, and other damages in accordance with law and subject to proof at trial.

**SIXTH CAUSE OF ACTION: VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 *Monell* CLAIM BY PLAINTIFFS AGAINST DEFENDANT COUNTY**

130. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

131. ALL PLAINTIFFS are citizens of the United States, protected by 42 U.S.C. §1983.

132. Under 42 U.S.C. §1983 the government, including the COUNTY, is prohibited from acting unconstitutionally resulting from an official COUNTY policy, a

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

unofficial COUNTY custom, or because the COUNTY was indifferent in a failure to train or supervise its employees to prevent engagement in unconstitutional behavior.

133. PLAINTIFFS allege that the COUNTY has unlawful customs, practices, and habits of improper and inadequate hiring, training, retention, discipline and supervision of its investigators and employees, mentioned herein as proximately causing the Constitutional deprivations, injuries and damages suffered by PLAINTIFFS and alleged herein.

134. This includes but is not limited to communicating false information to the Juvenile Court, using such false information to obtain legal custody of the children for several months, even after MICHELLE presented clear evidence that any possible concern on behalf of the COUNTY Caseworkers should have been alleviated, as detailed above.

135. PLAINTIFFS are informed and believe and thereon allege that over a period of 10 months, the COUNTY engaged in Constitutionally improper conduct to such an extent that that conduct took on the force and effect of "policy" such that the official and unofficial customs, practices and policies as listed herein became the standard of practice for DEFENDANTS.

136. PLAINTIFFS' constitutional rights alleged herein are granted to them by 42 U.S.C. § 1983 and § 1985 including those under the First, Fourth and Fourteenth Amendments.

137. At all relevant times herein, DEFENDANT COUNTY established and/or followed policies, procedures, customs and/or practices (herein collectively referred to as "policy" or "policies") which were the moving force behind the violations of PLAINTIFFS' Constitutional rights alleged above, as are granted to them by 42 U.S.C. § 1983 and 6 1985, as well as the case of *Monell v. New York*

30

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

*City Department of Social Services,* 46 U.S. 658 (1978), including those under the First, Fourth and Fourteenth Amendments.

138. These customs and policies of the COUNTY include, but are not limited to the following:

a. Detaining or removing children from the legal and/or physical custody of their parents and families without exigent circumstances and without good reason.

b. Detaining or removing children from the legal and/or physical custody of their parents, without exigent circumstances, and detaining them for an unreasonable period after any alleged basis for detention is negated, resulting in wrongful termination of parental rights under some circumstances.

c. The custom and practice of using trickery, duress, undue influence, fabrication of evidence and/or false testimony and in failing to disclose exculpatory evidence in preparing and presenting reports and court documents to the Juvenile Court, causing wrongful interference with and wrongful termination of parental rights, including those as to familial relations.

d. Acting with deliberate indifference in implementing a policy of inadequate training and/or supervision and/or by failing to train and/or supervise its officers in providing the Constitutional protections guaranteed to citizens, including those under the First, Fourth and Fourteenth Amendments when performing actions related to alleged child abuse and dependency proceedings.

e. The custom and practice of setting forth allegations in Juvenile Dependency Petitions against parents claiming violations of WIC § 300 regardless of

31

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

whether reasonable and articulable evidence exists at the time to support the claims set out in the petition under the penalty of perjury.

f. The policy of fraudulently charging parents with child abuse where none exists.

g. The custom, policy, and/or practice of interviewing MINOR children without Court Order, parental consent, or parental knowledge.

h. The policy of retaliating against individuals who exercise their Constitutional right including to object to, refuse and/or complain about the actions of the COUNTY, HHSA, or their Caseworkers.

139. DEFENDANT COUNTY breached its duties and obligations to PLAINTIFFS, including but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, practices or customs; failing to property select, supervise, train, control, review, counsel and discipline their agents and employees as to their compliance with Constitutional safeguards; and by encouraging and permitting DEFENDANTS and DOES 1 THROUGH 10 to engage in the unlawful and unconstitutional conduct as herein alleged.

140. DEFENDANT COUNTY has also established policies, procedures, practices and/or customs that authorize Caseworkers employed by the COUNTY to interview children without a parent's consent, court order, or exigent circumstance. This policy contributed to the violations alleged above, when MICHELLE's minor child J.T.C., born in 2003, from out of state was questioned by Caseworker IRIBE-MORENO without parental knowledge or consent. This was a violation of MICHELLE and the MINOR child's rights granted to them under 42 U.S.C. §1983 and §1985, including those under the First, Fourth and Fourteenth Amendments.

141. DEFENDANT COUNTY had a duty to PLAINTIFFS at all times to establish, implement and follow policies, procedures, customs and/or practices which

32

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

confirm and provide for the protections guaranteed to PLAINTIFFS under the United States Constitution, including the First, Fourth and Fourteenth Amendments; to use reasonable care to select, supervise, train, control and review the activities of all agents and employees in their employ; and further, to refrain from acting with deliberate indifference to the Constitutional rights of the PLAINTIFFS herein so as not to cause them the injuries and damages alleged herein.

142. DEFENDANT COUNTY knew, or should have known, that by breaching the aforesaid duties and obligations, it was foreseeable that they would, and did, cause PLAINTIFFS to be injured and damaged by their wrongful policies and acts as alleged herein and that such breaches occurred in contravention of public policy and as to their legal duties and obligations to PLAINTIFFS.

143. These actions, or inactions of the Defendants are the legal cause of injuries to PLAINTIFFS as alleged herein; as a result, PLAINTIFFS have sustained general and special damages, and will incur attorney's fees, costs, and expenses, including those authorized by 42 U.S.C. § 1988 to an extent and in an amount subject to proof at trial.

**SEVENTH CAUSE OF ACTION: VIOLATION OF STATE CIVIL CODE § 52.1 BY MICHAEL GANEY AND MICHELLE GANEY AGAINST ALL DEFENDANTS**

144. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

145. PLAINTIFFS were citizens of the State of California at all relevant times herein.

146. California State Civil code § 52.1 guarantees the peaceable enjoyment of federal and state Constitutional rights by citizens of the state of California and allows the Attorney General, or any City or District Attorney to bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California against any person or person that interferes by threat,

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

intimidation or coercion, or attempts to interfere with federal or state Constitutional rights. If an action is brought, the relevant Attorney may also seek a civil penalty of $25,000 assessed against each person who is found to have violated California State Civil Code § 52.1.

147. The conduct of all DEFENDANTS includes, but is not limited to, the unlawful interview of the 17-year-old MINOR child of MICHELLE who was not involved in this case and an out-of-state resident without MICHELLE's knowledge or consent, the wrongful seizure of the legal custody of the PLAINTIFF MINORS and maintaining that seizure even after any alleged basis for detention had been negated, the procuring of false testimony, fabrication of evidence suggesting that MICHELLE in some way engaged in or was responsible for the perpetration of Domestic Violence, refusal to disclose exculpatory evidence of the previous abuse of MICHELLE by her ex-abuser in preparing and presenting reports and documents to the Juvenile Court in relation to the Dependency proceedings, all in violation of the PLAINTIFFS' Constitutional rights under the First, Fourth and Fourteenth Amendments.

148. By their acts and omissions, DEFENDANTS and DOES 1 THROUGH 10, inclusive, acting in concert and/or conspiracy, as described above, violated the PLAINTIFFS' right under California Civil Code §52.1, including but not limited to the following:

a. The right to enjoy and defend life and liberty acquire, possess, and protect property, and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1.

b. The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches; and a warrant may not issue except on probable cause, supported by oath or affirmation,

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

particularly describing the place to be searched and the persons and things to be seized, as secured by the California Constitution, Article 1, Section 13.

c. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

149. MICHAEL and MICHELLE allege that DEFENDANTS and DOES 1 THROUGH 10 either intentionally or recklessly, whether as a result of policies, practices, customs or procedures, or as a result of ineffective, non-existent, or inadequate training and education of employees, caused the individually named employee-defendants to engage in the actions or inactions complained of herein, and such policies and non-existent/inadequate training were primarily responsible for the acts or omissions of said individually named defendant employees leading to the violation of the rights of PLAINTIFFS as alleged herein.

150. DEFENDANTS and DOES 1 THROUGH 10 subjected PLAINTIFFS to their wrongful conduct, depriving PLAINTIFFS of their rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of PLAINTIFFS were violated by their acts and/or omissions.

151. As a result of the conduct of DEFENDANTS and DOES 1 THROUGH 10, inclusive, each have violated the rights of PLAINTIFFS by interfering with PLAINTIFFS' rights through threats, intimidation, coercion, or attempts thereto, including forcing MICHAEL and MICHELLE to agree to and conform to their demands to sign a "Safety Plan," causing the violation and interference with the exercise or enjoyment of PLAINTIFFS' rights secured by the laws and Constitution of the United States, the laws and Constitution of the State of California, as well as the requirements of Welfare and Institutions §§ 300.2, 305, 306, 307, 307.4, 308, 309, 311, 313, 319, 328, 328.3, 340, and the prohibitions of

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

Government Code §820.21 in using fabricated evidence, failure to disclose exculpatory evidence and by obtaining or attempting to obtain evidence and testimony by fraud, duress and undue influence in juvenile dependency investigations and proceedings.

152. Pursuant to Government Code § 815.2, the COUNTY is vicariously liable for the conduct of its employees.

153. These violations of the PLAINTIFF's rights by the DEFENDANTS and DOES 1 THROUGH 10 are rights that are guaranteed and protected by Civil Code §52.1 and entitling PLAINTIFFS to damages and relief, including compensatory and punitive damages, other equitable relief, injunctive relief, statutory civil penalties (including $25,000.00 as to each individual DEFENDANT) and attorneys' fees, all of which are requested herein.

154. As the direct and proximate result of these actions of the DEFENDANTS, the PLAINTIFFS have suffered, and will continue to suffer physical, mental, emotional, and financial injury, all to an extent and in an amount subject to proof at trial.

**EIGHTH CAUSE OF ACTION: STATE LAW TORT CLAIMS- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, FALSE IMPRISONMENT, AND NEGLIGENCE BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS AND DOES 1 THROUGH 10**

155. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

156. California's Government Code § 820.21(a) extends tort liability to certain government workers (Social Workers, Child Protection Workers, Other authorized to conduct investigations under Chapter 1, Part 1 of Division 2 of the Welfare and Institutions Code) who are not entitled to governmental immunity under the Eleventh Amendment to the U.S.C Constitution when any of the following are committed with malice: (a) Perjury; (b) Fabrication of Evidence;

36

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

(c) Failure to disclose known exculpatory evidence or (d) obtaining testimony by duress, as defined in Section 1569 of the Civil Code, fraud as defined in either Section 1572 or Section 1573 of the Civil Code, or undue influence, as defined in section 1575 of the Civil Code.

157. (b) "Malice" is "conduct that is intended by the person in subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others."

158. Cal. Civ. Code § 1569 defines "duress" as any of the following: (a) unlawful confinement of the person of the party, or of the spouse of such party, or of an ancestor, descendant, or adopted child of such party or spouse; (b) unlawful detention of the property of any such person; (c) confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly harassing or oppressive.

159. Cal. Civil Code § 1572 defines "fraud" as any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; (3) the suppression of that which is true, by one having knowledge or belief of the fact; (4) a promise made without any intention of performing it; or (5) any other act fitted to deceive.

160. Cal. Civ. Code §1575 defines "Undue Influence" as "(1) In the use, by one in who a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; (2) In taking advantage of another's weakness of

37

mind; or (3) in taking a grossly oppressive and unfair advantage of another's necessities or distress.

161. The DEFENDANTS' conduct was malicious as defined above because the COUNTY engaged in despicable conduct detailed above with an intent to injure, as evidenced by COUNTY workers' statements after the First Child and Family Team Meeting, and then behavior consistent with those intentions throughout the 10 months of the case. The COUNTY also demonstrated that they had a willful and conscious disregard of the rights or safety of others by their outrageous, uncivil, despicable, and unethical behavior throughout the case as detailed above including duress to get the initial "Safety Plan" signed and information to conduct their biased and deficient investigation, fraud by presenting interviews they knew contained false information to the Court.

162. Based on the information above, the COUNTY engaged in duress under Cal. Civ. Code § 1569(c) which involves lawful but unjustly harassing confinement because MICHAEL and MICHELLE were uncomfortably confined in the small apartment with Social Workers, and the Social Workers refused to leave until the parents signed the "Safety Plan."

163. Based on Cal. Civil Code § 1572, the COUNTY engaged in fraud under the suppression of that which is true, by one having knowledge or belief of the fact by failing to include the extensive evidence of past abuse of MICHELLE and the older children in the "Detention Report," and under any other act fitted to deceive by all DEFENDANTS throughout the life of the case for 10 months as each respective Caseworker continued to ignore the facts of MICHELLE being a victim rather than a perpetrator of Domestic Violence and also ignoring the fact of MICHELLE's and the MINORS' progress in self-arranged services. All reports submitted to the Juvenile Court were contrived and false.

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

164. Based on Cal. Civ. Code §1575 the COUNTY engaged in undue influence throughout the case under the use, by one in who a confidence is reposed by another, or who holds a real or apparent authority over him as the Caseworkers continually threatened to remove the children from the parents, under of such confidence or authority for the purpose of obtaining an unfair advantage over him; under taking advantage of another's weakness of mind knowing MICHELLE suffered from abuse-related mental health concerns, and undertaking a grossly oppressive and unfair advantage of another's necessities or distress by repeated threats to remove the children from the parents in this case.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

165. ALL DEFENDANTS engaged in the aforementioned outrageous, unprivileged conduct, including, but not limited to: (a) the use of duress and undue influence in forcing PLAINTIFFS to submit to their demands; (b) by unlawfully taking legal custody of the MINOR PLAINTIFFS for a period of 10 months and continuing such detention of the MINOR PLAINTIFFS long after any perceived risk had been extinguished; (c) by investigating and questioning with intimidation, coercion and duress of the PLAINTIFFS; (d) by maliciously presenting false evidence to the Juvenile Court and withholding exculpatory evidence; (e) by falsely and maliciously alleging and reporting that the MINORS physical safety was threatened; and (f) by retaliating against PLAINTIFFS due to their exercise of free speech to complain about DEFENDANTS' conduct.

166. DEFENDANT COUNTY is vicariously liable for these DEFENDANTS and DOES 1-10 conduct under government code § 815.2.

167. DEFENDANTS and DOES 1 THROUGH 10 intended to cause, or acted in reckless disregard of causing, physical and emotional distress, and false imprisonment when they engaged in such conduct, which they knew not to be true and proper.

39

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

168. As a legal result of DENFENDANTS' tortious conduct, PLAINTIFFS suffered physical and emotional distress, including, but not limited to, fright, nervousness, anxiety, worry, mortification, shock, humiliation, and indignity to an extent and in an amount subject to proof at trial. The emotional distress suffered by the PLAINTIFFS was reasonably foreseeable to all DEFENDANTS based on their wrongful actions alleged herein this Complaint.

**FALSE IMPRISONMENT**

169. As a legal result of DEFENDANTS' tortious conduct, PLAINTIFFS also suffered an unconstitutional loss of freedom from false imprisonment in the County of San Diego, State of California, against their wills for a period of 10 months. PLAINTIFFS were prevented from leaving San Diego County without the express permission of the Court, resulting in a loss of bodily integrity and basic liberty. This loss of freedom deprived PLAINTIFFS not only of their individual liberty, but also of family consortium and access to out of state family support networks. This restriction also resulted in financial, educational, and employment-related losses to the PLAINTIFFS. The loss of freedom suffered by the PLAINTIFFS was not only reasonably foreseeable to all DEFENDANTS, but practically certain to result based on the wrongful actions alleged here in this Complaint.

**NEGLIGENCE**

170. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

171. PLAINTIFFS assert this cause of action for Negligence pursuant to California Government Code §§ 815.2, 815.6 and 820.

172. Government Code section 820.21 creates liability for social workers and child protection workers who "conduct investigations or proceedings" when certain acts are committed maliciously. The acts include, but are not limited to perjury, fabrication of evidence, and obtaining testimony under duress or undue

40

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

influence. Malicious conduct is committed either to cause injury or despicable conduct that is committed with a willful and conscious disregard of the rights of others. DEFENDANTS are not entitled to immunity in this case.

173. In engaging in the acts, conduct and omissions alleged herein DEFENDANTS and DOES 1 THROUGH 10 each acted unreasonably and below the applicable standard of care. In engaging in the acts, conduct and omissions alleged herein, all DEFENDANTS and DOES 1 THROUGH 10 actually and proximately caused the injuries and damages alleged herein.

174. DEFENDANTS and DOES 1 THROUGH 10 owed PLAINTIFFS an affirmative duty of care to exercise reasonable and ordinary care and skill in investigating, documenting, and assessing the PLAINTIFFS' child welfare circumstances.

175. DEFENDANTS and DOES 1 THROUGH 10 failed to execute their professional responsibilities as Caseworkers and Supervisors as defined by the COUNTY'S job classifications as Caseworkers and Social Work Supervisors.

176. DEFENDANTS and DOES 1 THROUGH 10 that were Social Worker Supervisors failed to train, supervise, and review the activities of Caseworkers RUIZ, AYALA, VILLA, and IRIBE-MORENO. This is exemplified by the errors and omissions in the petition and reports submitted to the Juvenile Court by Caseworkers RUIZ, AYALA, VILLA, and IRIBE-MORENO.

177. DEFENDANT COUNTY and SOCIAL SERVICES have adopted the California Structured Decision-Making (SDM) Model as a policy. SDM is designed to bring structure and consistency to each decision point in the child welfare system, using evidence-based, objective, and comprehensive assessment tools. Despite adopting the SDM, DEFENDANT COUNTY and SOCIAL SERVICES have a custom of not following through with the SDM model and policies.

41

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

178. DEFENDANTS not only failed to take the necessary and appropriate actions as reasonable Caseworkers and Supervisors but also failed to provide services to the family in a timely manner as required pursuant to CDSS DIV 31-315.

179. DEFENDANTS who were Social Work Supervisors were responsible for ensuring Caseworkers social work activities, case records and reporting to the Juvenile Court reflected compliance with legal requirements and was thorough and accurate in presenting information.  It is questionable as to whether any DEFENDANT Social Work Supervisors even read the reports carefully based on the errors, omissions and lack of pertinent information presented.

180. At all relevant times, DEFENDANTS and DOES 1 THROUGH 10 were under a mandatory duty not to interfere with MICHAEL and MICHELLE's custody of the MINORS unless certain conditions were met, which did not exist here (See Welf. & Inst. Code §§ 300.2, 305, 306, 307, 307.4, 308, 309, 311, 313, 319, 328, 328.3, 332, 340).

181. At all relevant times, DEFENDANTS and DOES 1-10 had a duty to comply with the regulations and requirements of the regulations of the California Health and Human Services, Agency, the Department of Social Services, and the Child Welfare Services Manual Policies and Procedures.  The regulations of the DSS Manual: (i) are regulations established by DSS pursuant to California Welfare and Institutions Code § 16501; (ii) were duly adopted pursuant to the Administrative Procedures Act, California Government Code §§ 11340 et seq. and filed with the Secretary of State and therefore "have the force of law and are matters subject to mandatory judicial notice." *Scott v. County of Los Angeles.* (1994). 27 Cal. App.4th 124, 145).

182. As further example and without limitation, as part of the emergency response protocol, the COUNTY through its subdivision and entity SOCIAL SERVICES, were required to complete, among other things, a report outlining and weighing

42

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

factors for intervention such as: the caretakers' ability to care for the children, precipitating evidence, the child's characteristics, and family factors, among other things. Despite such an affirmative duty, there was no report inclusive of the relevant and mandatory factors such as MICHAEL and MICHELLE's ability and desire to care for the MINORS, the lack of any previous finding of abuse or neglect, and numerous other factors indicative of a capable and loving home environment.

183. The COUNTY, through its subdivision and entity, SOCIAL SERVICES, deprived MICHAEL, and MICHELLE of their right to legal custody of their children for a period of 10 months without reason.

184. In addition to the standard of care and reasonable person duties, DEFENDANTS and DOES 1 THROUGH 10 owed PLAINTIFFS statutory and regulatory duties imposed by both federal and state law, some of which have been referred to above. Such conduct amounts to negligence per se.

185. DEFENDANT COUNTY also provided inadequate and/or non-existent training, including but not limited to, 1) non-existent or inadequate training on the First, Fourth and Fourteenth Amendments as applied to interviewing minors and others in the context of a child abuse investigation that may eventually involve the removal of children from their parents; (2) the emotional trauma and psychological damage to a child caused by removal from their parents; (3) the clearly established law of this federal circuit on the issues of exigency, least intrusive means, and the proper investigation before taking legal custody of a child; (4) state law applicable to juvenile dependency proceedings and the reunification of parents and/or avoidance of the taking of legal custody entirely.

186. DEFENDANTS breaches and violations of the duties owed to PLAINTIFFS were a substantial factor in causing PLAINTIFFS' physical, mental, and

43

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

emotional pain and suffering during the case, as well as the lasting effects of trauma related to the case.

## NINTH CAUSE OF ACTION: CALIFORNIA WELFARE AND INSTITUTIONS CODE § 300(b)(1) IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO DOMESTIC VIOLENCE SURVIVORS

187. PLAINTIFFS incorporate all previous paragraphs set forth in this complaint.

188. California Welfare and Institutions Code § 300(b)(1) states: "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: (a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the way a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm. For purposes of this subdivision, "serious physical harm" does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury.

(b) (1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, because of any of the following:

(A) The failure or inability of the child's parent or guardian to adequately supervise or protect the child.

(B) The willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left.

44

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

(C) The willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment.

(D) The inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse.

189. This is the law the COUNTY used to take improper legal custody of the MINOR CHILDREN in this case. As was clearly iterated by THE COURT OF APPEAL, FOURTH APPELLATE DISTRICT, DIVISION ONE, STATE OF CALIFORNIA, there was not enough evidence to sustain the COUNTY's petition under California Welfare and Institutions Code § 300(b)(1) because there was a lack of evidence that the children have suffered or there is a substantial risk that the children will suffer serious physical harm or illness due to the failure of the children's parent or guardian to adequately supervise or protect the child.

190. The COUNTY regularly applies this "failure to protect" provision to parents who have done nothing wrong besides attempt to get help when they are initially assaulted by their abusive partners. In San Diego County, parents routinely lose their parental rights for no other reason than they are Domestic Violence Survivors.

191. Nowhere in the above section does the law say or suggest that it is a Domestic Violence Survivor's responsibility to predict the initial violent behavior of a partner and proactively protect him or herself and the children from a risk the victim parent has no ability to predict or prevent.

192. The statute is left intentionally vague to apply to unforeseen situations where children are in danger in an unconventional situation, which is an important and laudable goal. However, it does not specify that the law can be applied to

45

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

Domestic Violence victims to remove their children, simply because they are survivors of Domestic Violence. Nevertheless, the COUNTY repeatedly rips away the rights of Domestic Violence Survivors to their children for no other reason than they are Domestic Violence Survivors.

193. When a law is vague, Courts will look to the legislative intent of the lawmakers to determine the intent of those legislators when the statute was enacted. Usually, this is applied to criminal statutes. However, a juvenile court dependency case is the civil court equivalent of a criminal death penalty case because parents' legal and physical custody rights to their children can be terminated forever. This action of the termination of parental rights has such far-reaching implications for children and families, it should be very carefully considered and applied in only the most dangerous and egregious cases. The best outcome for children is generally reunification with their parents.

194. In examining the Legislative Session Notes from the California Legislature when California Welfare and Institutions Code § 300(b)(1) was enacted in 1989, nowhere does the legislature state an intent to transfer the blame for an abuser's behavior to the survivor, and to take away the parental rights of a non-offending parent.

195. The Legislature needs to amend this law, but until then the Court should consider offering Declaratory Relief to Domestic Violence Survivors by declaring that the COUNTY cannot remove the parental rights of Domestic Violence Survivors simply because they are Domestic Violence Survivors.

196. Further, the court should prohibit the placement of children by the juvenile courts with abusers in violation of Cal. Fam. Code § 3044, a law that presumes a person who has perpetrated domestic violence is not a proper person to have custody of children.

46

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

197. Cal. Fam. Code § 7611(d) allows a non-parent to "elevate" to father status if "The presumed parent receives the child into their home and openly holds out the child as their natural child." This is a dream come true for abusers. Abusers can continue to control Domestic Violence Survivors through children that are not even theirs, by "elevating themselves to father status." The court also needs to address this, declaring a potential "elevating father" ineligible for presumptive father status if he has perpetrated Domestic Violence against the mother and/or abused the child.

198. Public policy should ensure that parents are not afraid to seek help and protection from domestic violence for themselves and their children from authorities of the State because they fear they will lose rights to their children simply for doing so. Yet this is exactly what the COUNTY does daily in its victim-blaming, sexist stance on Domestic Abuse. Survivors are regularly blamed for their own victimization, and responsibility for the offending parent's violent behavior is unfairly and wrongly displaced onto the non-offending parent.

199. Children are removed from traumatized but loving and relatively good non-offending parents, and either placed with the abusive parent to re-endure the cycle of abuse with the abusive parent's next partner (treatment is extremely ineffective for reforming abusers), or in foster families to be re-traumatized and alienated from their non-offending parents, who have a much greater likelihood of benefiting from treatment than abusers.

200. The injustice is to both for Domestic Violence Survivors and their children. Abusers are enabled to continue their abusive behavior with new partners, and children are forced to endure the trauma of living with a recidivating abuser or a in a foster home, neither of which is a good outcome for children. Abusers win and the cycle of violence continues unaffected.

47

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

201. Abusers should be held accountable for their own behavior, and denied unsupervised access to their victims, including their own children, until they can demonstrate consistently safe behavior over an extended period of time.

202. California family court routinely denies custody of children to abusers in civil divorce and custody matters for a period of five (5) years, and the Juvenile Court should not be allowed to circumvent this important safeguard for children and place children with abusers, especially when the family's involvement with the juvenile court is because of Domestic Violence, even if the COUNTY erroneously suggests such placement of children with abusers. Abusers are not good parents. Placing a child with an abuser nearly guarantees the cycle of violence will continue unabated.

## DAMAGES

1. PLAINTIFFS have suffered damages related to the claims iterated above.

2. Many of the damages will be calculated at trial, including those related to emotional distress, false imprisonment, and some of the civil rights violation claims. However, there are some compensatory damages that can be calculated at the present time, including but not limited to:

   a. MICHELLE's loss of her scholarship to California Western School of Law due to the stress of this COUNTY action, in the amount of approximately $190,000.00.

   b. The costs of the family to move back to Wyoming to be safe from being further harassed by the COUNTY, in the amount of approximately $25,000.

   c. The costs of lost employment imposed on MICHAEL by not being able to leave San Diego County with the children in the amount of approximately $60,000.00.

48

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

    d. MICHELLE's costs for enrolling and paying tuition, fees and other enrollment costs at the University of Wyoming and moving to Laramie, Wyoming to attend law school in the amount of approximately $150,000.00.

    e. MICHELLE's costs for lost wages and increased tuition costs due to having to repeat her first year of law school at the University of Wyoming in 2022-2023, in the amount of approximately $200,000.00.

**PRAYER FOR RELIEF**

1. For compensatory damages as detailed above.

2. For general damages according to proof against all DEFENDANTS.

3. For special damages according to proof against all DEFENDANTS.

4. For punitive damages against all DEFENDANTS.

5. For pre-judgment and post-judgment interest, according to law, against all DEFENDANTS.

6. For attorney's fees against all DEFENDANTS.

7. For the costs of suit against all DEFENDANTS.

8. For the finding that California Welfare and Institutions Code § 300(b)(1) is unconstitutionally vague as applied to Domestic Violence Survivors.

9. For Declaratory relief for Domestic Violence Survivors that the Court prohibit the COUNTY and the juvenile court from removing children from non-offending parents under California Welfare and Institutions Code § 300(b)(1) simply because they are Domestic Violence survivors. The COUNTY must have another valid reason for removal of a non-offending parent's legal and/or physical custody right to children unrelated to his/her Survivor status.

10. For Declaratory relief for Domestic Violence Survivors that the Court prohibit the COUNTY and the juvenile court from removing children from non-offending parents under California Welfare and Institutions Code § 300(b)(1) and placing

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

them with the offending parent, regardless of treatment status, because this violates the important safeguard established under Cal. Fam. Code § 3044, a law that presumes a person who has perpetrated domestic violence is not a proper person to have custody of children.

11. For Declaratory relief for Domestic Violence Survivors that the Court prohibit the COUNTY and the Juvenile Court from removing children from non-offending parents under California Welfare and Institutions Code § 300(b)(1) and elevating Domestic Violence Perpetrators to who are not related to the child to "father status" under Cal. Fam. Code § 7611(d), which allows a non-parent to "elevate" to father status if "the presumed parent receives the child into their home and openly holds out the child as their natural child." The Court should order that a Domestic Violence Perpetrator before the Juvenile Court is automatically ineligible for elevation to "father status" under Cal. Fam. Code § 3044, a law that presumes a person who has perpetrated domestic violence is not a proper person to have custody of children, or alternatively ineligible if the potential father has abused the mother and/or the child.

12. For such and other further relief as the Court deems just and proper.

Dated: August 1, 2023                    Respectfully submitted,


_Michelle Diane Ganey_
Michelle Diane Ganey
1109 E. Bradley St.
Laramie, WY 82072
Phone: 307-248-2228
E-Mail: mganey@uwyo.edu

In Pro Per

50

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL

Michael James Ganey, Jr.
P.O. Box 8731
Jackson, WY 83002
Phone: 307-331-6508
E-Mail: mganeyjr1970@gmail.com

In Pro Per

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL